**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GENERAL TEAMSTER, WAREHOUSE AND DAIRY EMPLOYEES, LOCAL NO. 126 and its Agent, William Wetzel, and General Drivers and Dairy Employees, Local No. 563, and its Agents, Robert Schlieve, Marvin DeVries and Jeff Curtin, Respondents.**

No. 18164.

United States Court of Appeals, Seventh Circuit.

Nov. 9, 1970.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Janet McCaa, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, John I. Taylor, Atty., N.L.R.B., Washington, D. C., for petitioner.

Joseph A. Melli, Jack D. Walker, Madison, Wis., for intervenor, Courtney & Plummer; Melli, Smith & Shiels, Madison, Wis., of counsel.

David Leo Uelmen, Alan M. Levy, Milwaukee, Wis., for respondents; Goldberg, Previant & Uelmen, Milwaukee, Wis., of counsel.

Before DUFFY, Senior Circuit Judge, and CUMMINGS and KERNER, Circuit Judges.

DUFFY, Senior Circuit Judge.

This is an application by the National Labor Relations Board (Board) for enforcement of its order which it issued against the General Teamster, Warehouse and Dairy Employees, Local No. 126 and its agent, William Wetzel (hereinafter referred to as Local 126) and General Drivers and Dairy Employees Local No. 563 and its agents (hereinafter referred to as Local 563). The unfair labor practice charges resulted from certain picketing by Local 126 which took place outside the gates of Courtney & Plummer, Inc. and Twin City Concrete Corporation in Neenah, Wisconsin, in an effort to involve employees of those two corporations in a dispute which Local 126 had with a partnership known as Oshkosh Ready Mix ("Oshkosh"). The Board found that such activity by respondents violated the secondary boycott

provisions of the National Labor Relations Act.[1]

The respondents contended before the Board that the Courtney & Plummer and Twin City corporations were "allies" of "Oshkosh" due to certain alleged common ownership and control, and that therefore the picketing was permissible under the Act. The principal issue before us is whether substantial evidence on the record as a whole supports the Board's finding that Courtney & Plummer and Twin City were not allies of "Oshkosh". We hold that the record supports such a finding and we grant the Board's request for enforcement of the order.

Courtney & Plummer is a corporation engaged in the sale of sand, gravel and aggregate, and Twin City is a corporation engaged in the sale and delivery of ready mixed concrete. The two corporations are commonly owned and are located in Neenah, Wisconsin, where they share office space. The drivers at both companies are represented by Local 563.

All of the stock in Courtney & Plummer and Twin City is owned by members of the Courtney and Plummer families. These families fall into two generations. The older generation consists of Earl Plummer, Walter Courtney and David Courtney, Sr. The younger generation consists of nine children of the two families. The interests of the older Courtneys and Plummers focus mainly on the Courtney & Plummer and Twin City corporations. However, some members of the younger generation of the two families also own and control a partnership called Inland Trucking. Inland Trucking leases dump trucks to various concerns (including Courtney & Plummer) and has investments in several ready mix concrete companies around the Lake Winnebago area. One such company is "Oshkosh", in which it has a 50% interest.

"Oshkosh" is a partnership which sells and delivers ready mix concrete and is located in Oshkosh, Wisconsin, about six-teen miles distant from Neenah. The drivers of "Oshkosh" are represented by Local 126. The two equal partners of "Oshkosh" are Inland Trucking and Wesley Meilahn. Meilahn serves as managing partner, handling the day to day operations of the company and receiving a salary over and above his partnership share. Meilahn has interests in other ready mix concrete companies in the area, but has no interest in either Courtney & Plummer or Twin City. Meilahn is in charge of all labor relations for "Oshkosh".

In early May 1968, the collective bargaining agreement between Local 126 and "Oshkosh" expired. On July 19, 1968, Local 126 struck "Oshkosh" and commenced picketing its plant. Shortly after noon on that same date, pickets of Local 126 appeared at the main gate of Courtney & Plummer and Twin City in Neenah. They carried signs which read on one side "Courtney & Plummer, Inc., allied with Oshkosh Ready Mix," and on the other side appeared "Teamsters Local 126 on strike. Oshkosh Ready Mix Co."

Drivers of Courtney & Plummer and of Twin City ignored the pickets and continued to use the main gate. However, about 12:45 p. m. Robert Schlieve, Marvin DeVries and Jeff Curtin, all representatives of Local 563, started halting the trucks. In each instance, Schlieve told the driver of the truck that the picket line established by Local 126 was "primary" in character and that the driver had the right to respect it under existing bargaining agreements between Local 563 and Courtney & Plummer and Twin City. After being so informed, the driver-employees of Courtney & Plummer and Twin City ceased work and did not resume their jobs until July 25. It was this activity by Local 126, Local 563 and their agents which the Board found to have violated Sections 8(b) (4) (i), (ii) (B) of the Act.

1. Section 8(b) (4) (i) and (ii) (B), National Labor Relations Act. The Board's decision and order are reported at 175 N.L.R.B. No. 85.

The existence of an ally relationship between Courtney & Plummer and Twin City on the one hand and "Oshkosh" on the other is an affirmative defense which the respondents had the burden of proving in this case. United Marine Division of the National Maritime Union (D.M. Picton and Co., Inc.) 131 N.L.R.B. 693 at 698 (1961). But in fulfilling this burden, it was not enough for respondents to demonstrate that the two concerns were commonly owned. It is true that by virtue of Inland Trucking being 100% owned by members of the Courtney and Plummer families, while at the same time owning 50% of "Oshkosh", the thread of common ownership by those two families may have existed in part. But common ownership is not determinative by itself. Additionally, there must be demonstrated some sort of common control or entanglement which justifies widening a dispute beyond its initial limits and lifting the legislative proscription which was imposed on secondary boycotts. Miami Newspapers' Pressmen's Local No. 46 v. N.L.R.B., 116 U.S.App.D.C. 192, 322 F.2d 405 (1963); San Francisco-Oakland Newspaper Guild v. Kennedy, 412 F.2d 541 (9 Cir., 1969). We hold that the Trial Examiner and the Board were entirely correct in finding the essential element of common control by the Courtney and Plummer families lacking in the present case.

Courtney & Plummer and Twin City are located sixteen miles from "Oshkosh." The Board found that the companies serve basically different local geographical areas and do no significant business with one another. There is no evidence of any preferential treatment given to one another in what dealings did occur. There was no common supervision or exchange of employees. All books and records are separately kept.

It is clear that the companies functioned as distinct entities.[2] Most importantly, there is absolutely no evidence of any common labor relations policy among the companies at the time of this dispute. They belonged to separate employer's associations and employed different labor counsel. In fact, contrary to respondents' argument, it appears that the labor bargaining strategies of the companies followed widely different policies, for in 1968 "Oshkosh" locked out its employees while Courtney & Plummer and Twin City did not.

Respondents contend that since all non-payroll checks of "Oshkosh" had to be co-signed by a representative of Inland Trucking, an ally relationship must have been present. We feel that the Board correctly rejected this argument. A co-signing arrangement of this sort is merely a common characteristic of partnerships. All that it proves is that Inland Trucking and Meilahn were co-owners of "Oshkosh." It does not prove in any way that Inland Trucking had control over Meilahn or over the labor relations policies at "Oshkosh." In fact, as mentioned above, the contrary appeared to be true. We have reviewed respondents' further arguments attempting to prove that, in reality, Inland Trucking had a "veto" over the operations of "Oshkosh" and find them similarly to be without merit.

The Board modified the trial examiner's recommended order to require respondents to cease and desist from secondary boycott activities directed against other neutral employers in support of their dispute with "Oshkosh." We hold the Board was justified in this respect in view of Local 126's previous Section 8(b)(4) violations[3] and the record evidence that Local 563 had previously engaged in similar conduct. We hold that the Board did not abuse its discretion in

2. Unlike the situation presented in the recent case of Carpet, Linoleum, S.T. & R.F.C.L.L.U. No. 419 v. N.L.R.B., 429 F.2d 747 (D.C.Cir. 1970) there is no evidence of any integration of business operations which of itself might have constituted part of the dispute between Local 126 and "Oshkosh."

3. See Building and Construction Trades Council of Fond du Lac County, 168 N.L.R.B. No. 81 (1967).

fashioning a remedy designed to prevent the enmeshing of other neutrals in the event of a continuing dispute between the respondents and "Oshkosh."

The order of the Board is

Enforced.

